UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KENT WILLIAMS,<br><br>               Plaintiff,<br><br>v.<br><br>KARL BAUMGARTNER, DR. CAMPBELL, KRINA STEWART, MALARY LOGAN, CLINICIAN ARNOLD, WARDEN RICHARDSON, CAPTAIN CROWEL, LIEUTENANT STERNER, LIEUTENANT TAMEZ, and DIRECTOR TEWALT,<br><br>               Defendants. | Case No. 1:24-cv-00279-DCN<br><br>**SUCCESSIVE REVIEW ORDER BY SCREENING JUDGE** |

Plaintiff Kent Williams has filed an Amended Complaint in this action (Dkt. 24), which the Court reviews under the standards of 28 U.S.C. § 1915 and Federal Rule of Civil Procedure 8(a)(2). The Court has the authority to seek additional information from the parties to assess Plaintiff's claims during the screening process. For example, the Court may exercise its discretion to order a *Martinez* report.[1] In this Order, rather than require a *Martinez* report, the Court is informed by Plaintiff's other litigations involving the same parties and same subject matter.

---

[1] In *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978), the trial court ordered (before answer) that the prison officials conduct an investigation of the incident to include an interrogation of those concerned, and file a report with the court, to enable the court to decide the jurisdictional issues and make a determination under section 1915(a). *Id*. at 319. The Ninth Circuit approved of the use of *Martinez* reports in *In re Arizona*, 528 F.3d 652, 659 (9th Cir. 2008).

SUCCESSIVE REVIEW ORDER BY SCREENING JUDGE - 1

# INTRODUCTION

Plaintiff is a prisoner in custody of the Idaho Department of Correction (IDOC), incarcerated at Idaho Maximum Security Institution (IMSI). He was placed in a non-acute suicide watch cell from February 28, 2024, to April 10, 2024. He was kept on suicide watch because he would not speak to mental health staff about whether he had suicidal ideation.

Over the past couple of years, Plaintiff has repeated a cycle of refusing to speak to mental health staff about whether he has suicidal ideation, placement in a suicide watch cell, and release into other housing. For example, in Case 1:23-cv-00584-BLW (Case 584), the following periods of confinement in suicide watch or similar restrictive housing units were at issue: (1) May 23, 2016, to May 31, 2016; (2) June 9, 2016, to June 14, 2016; (3) August 25, 2016, to September 6, 2016; (4) April 11, 2017, to April 29, 2017; (5) November 24, 2017, to December 4, 2017. *See* Case 584, Dkt. 3 at 9 to 19; Order at Dkt. 2 at 4-5. Plaintiff was also on a hunger strike from February 16, 2020, to March 18, 2020. *See* Case 584, Dkt. 3 at 22; Dkt. 2 at 5.

In this suit, Plaintiff asserts that he was subjected to unconstitutional conditions in the suicide watch unit for approximately 40 days, including being subjected to (1) extremely cold cell temperatures, including cold flooring, combined with inadequate clothing; (2) no clothes except a canvas cover; (3) only a mattress and no bedding for sleeping; (4) no safety shoes; (5) 24/7 bright lights in the cell without a dimming period; (6) no Bible or other "sensory stimulation"; (7) constant loud noise from correctional staff and inmate companions assigned to the unit, including interviewing other inmates, laughing, yelling, "yucking it up" on breaks, and "party[ing]"; (8) minimal hygiene items,

including four squares of toilet paper at a time, although sometimes he received more; (9) no soap to use with mildly warm running water to clean himself; (10) only a safety toothbrush; (11) an incoming mail restriction; and (12) an access to courts restriction.

Mental health professionals often state that the restricted conditions are necessary to prevent inmates in the suicide watch units from using everyday items to commit suicide, such as stuffing paper down their throats to suffocate themselves, using utensils as weapons to cut themselves, or hanging themselves with bedding. In addition, personal property restrictions are enforced because items may "interfere with the ability of staff to safely monitor the inmate, and distract from the primary purpose of suicide watch." *See* Case 1:20-cv-00008-REP, *Williams v. Deputy Warden McKay* (Case 08), Dkt. 32-2 at 2 (Declaration of IDOC chief psychologist Dr. Walter Campbell).

Normally, inmates do not remain on suicide watch for an extended period of time. Plaintiff is unusually steadfast in his refusal to speak to mental health providers about his mental health status. Plaintiff's strategy seems to be to outlast the will of mental health professionals so that they do not require him to communicate with them, or it may be to remain in suicide watch for a long period of time so that he can file a conditions-of-confinement suit. He asserts that mental health professionals know that he is not really suicidal, and therefore they should treat his refusal differently. He has repeatedly filed similar lawsuits.

## REVIEW OF AMENDED COMPLAINT

1.  **First and Eighth Amendment Claims**

    Plaintiff has previously brought First Amendment free speech and Eighth

SUCCESSIVE REVIEW ORDER BY SCREENING JUDGE - 3

Amendment cruel and unusual punishment claims arising from other confinements in a suicide watch unit. Here and there, he asserts that he should be permitted not to answer mental health staff's questions about whether he is suicidal; he should be permitted to escape the restrictive conditions based on his view that staff should know he is not really suicidal; and the longer he stays in a suicide watch cell for his refusal to speak, the more the harsh conditions of confinement make him feel bad, in turn, potentially causing him to truly be suicidal.

In Case 1:23-CV-00584-BLW, *Williams v. Campbell, et al.,* (Case 584), Judge Winmill concluded that Plaintiff did not have a First Amendment right to "not … engage in mental health evaluation." Case 584, Dkt. 1 at 3. Judge Winmill also rejected Plaintiff's assertion that "IDOC has no duty to conduct an unsolicited, random investigation to learn if someone is or is not suicidal. Even if they did—they do not—my right to refuse would take precedent—no overriding governmental interest." *Id*. at 4-5.

In Case 1:18-cv-00343-DCN *Williams v. Stewart*, (Case 343), this Court determined that Plaintiff had no Eighth Amendment claim based upon nearly the same facts asserted in the present case:

> Suicide is something of a national epidemic, and it is a prevalent issue in prisons. Mental health providers and prison officials cannot—indeed, they must not—take lightly an inmate's refusal to answer questions about suicidal ideation. The Court concludes that Plaintiff has failed to state a claim upon which relief can be granted because he admits that he refused to answer questions about whether he was suicidal. Thus, his placement on suicide watch—with its necessary limitations—did not violate the Eighth Amendment. There are no allegations in the Complaint from which a reasonable factfinder could infer that any Defendant involved in Plaintiff's

> placement on suicide watch acted with deliberate indifference. Even if the mental health clinicians or other defendants suspected that Plaintiff was merely being contrarian, deliberately unhelpful, or belligerent in refusing to answer their questions about suicidal ideation, the risk that he really was suicidal remained. In fact, if Defendants had released Plaintiff from suicide watch before they were absolutely sure he was not suicidal, they could have been acting with deliberate indifference to a risk of suicide.

Case 343, Dkt. 9 at 22-23.

In Case 08, Dr. Walter Campbell similarly opined:

> For a mental health professional to evaluate whether additional property can be safely and appropriately provided to an inmate on suicide watch, the inmate's mental stability and risks of self-harm must first be assessed. Such assessments require direct communication between the inmate and mental health professionals, and thus are heavily reliant on the cooperation and participation of the inmate. An inmate that refuses to speak with mental health professionals or withholds their cooperation cannot be assessed to determine if any additional property can safely and appropriately be provided to the inmate. To provide an inmate with additional property without completion of the assessments would be clinically irresponsible, violate important IDOC policies and practices, and expose IDOC to potential liability if the inmate were to use the property to commit self-injury.

Case 08, Dkt. 32-2 at 3.

Here, Plaintiff asserts that the conditions of confinement in the suicide watch unit are barbaric. He asserts these conditions aggravate mental health conditions, not aid them. Plaintiff, however, has no expertise about a mental health professional's exercise of discretion in removing privileges that may temporarily aggravate a patient's mental health condition to accomplish the greater good of saving that patient's life. Nor is there any case law addressing this narrow topic to guide mental health professionals, which demonstrates

that Defendants are entitled to qualified immunity. *See Thompson v. Drug Enforcement Admin.*, 492 F.3d 428, 435 (D.C. Cir. 2007) (noting that qualified immunity is a basis for dismissal of prisoner complaints under 28 U.S.C. § 1915A); *Morales v. Foster*, No. 17-CV-234-SM, 2019 WL 441967, at *4 (D.N.H. Jan. 3, 2019) ("Qualified immunity may provide grounds for a district court to dismiss a prisoner complaint under 28 U.S.C. § 1915A."), *report and recommendation adopted sub nom. Morales v. NH Att'y Gen.*, No. 17-CV-234-SM, 2019 WL 440564 (D.N.H. Feb. 1, 2019).

Therefore, Plaintiff may not proceed on First Amendment or Eighth Amendment claims in the context of his particular allegations, except as to the temperature in the suicide watch cell—a constitutional question that applies to all forms of housing, for which governing case law exists. This claim must be reviewed in the context of the allegations that suicide watch patients have a canvas covering for clothing and only a mattress but no bedding.[2]

---

[2] In *Havens v. Sheriff's Dep't of Aransas Cnty.*, No. 2:24-CV-00283, 2025 WL 2984608, at *23 (S.D. Tex. May 27, 2025), *report and recommendation adopted*, No. 2:24-CV-00283, 2025 WL 2960029 (S.D. Tex. Oct. 17, 2025), the pretrial detainee plaintiff complained of harsh conditions in the suicide watch unit, including having only a drain hole in his cell that could be flushed from outside his cell. The court rejected Plaintiff's claims as not amounting to a Fourteenth Amendment claim (the equivalent of an Eighth Amendment claim for a convicted felon):

> Plaintiff's allegations regarding the cleanliness of the drain hole in his private suicide watch cell come nowhere close to the egregious and "extraordinary" circumstances in *Taylor v. Stevens*, 946 F.3d 211 (5th Cir. 2019), *overruled on other grounds sub nom. Taylor v. Riojas*, 592 U.S. 7, 141 S.Ct. 52, 208 L.Ed.2d 164 (2020), which involved "obscene amounts of fecal matter, which contaminated Taylor's food and water." *Alexander*, 2024 WL 3240652, at *6. Here, Plaintiff states that the drain hole had feces on it, but although claiming that the suicide watch cell was not cleaned, Plaintiff's six-page complaint and 22-page questionnaire response do not allege facts indicating that the overall conditions in the suicide watch cell were unconstitutionally dirty or otherwise unsanitary. There is no allegation, for example, that Plaintiff's food or water or bedding or

2. **HIPAA Violation Claims**

Plaintiff also asserts that, because the prison uses inmates as suicide watch companions who have access to his medical records and information, his HIPAA rights were violated. However, the Health Insurance Portability and Accountability Act of 1996 (HIPAA), 42 U.S.C. § 1320, *et seq.*, provides no private cause of action, meaning that only the state or a state officer can bring a claim on behalf of an individual whose rights have been violated. *Webb v. Smart Document Solutions, LLC*, 499 F.3d 1078, 1081 (9th Cir. 2007). This claim is subject to dismissal for failure to state a claim upon which relief can be granted.

3. **Fourteenth Amendment Right to Privacy Claims**

Plaintiff also asserts that use of prison inmate suicide watch companions violates his right to privacy under the United States Constitution. The inmate companions view the inmates in suicide cells constantly, monitor medications, listen to conversations between mental health providers and inmates on suicide watch, access a patient's mental health records, and are part of clinical discussions about the patients they observe. Plaintiff asserts that these inmates gossip about the patients with other inmates in the general population, but he has no specific facts supporting this allegations.

The Court concludes that Plaintiff has stated a Fourteenth Amendment right to privacy claim if he can show that the inmates have not signed forms stating that they will

---

clothing were contaminated. Plaintiff may have been unhappy with the cleanliness level of his suicide watch cell, but the conditions he describes do not rise to the level of a constitutional violation.

keep confidential the information of the patients. See *Clarkson v. Coughlin*, 898 F. Supp. 1019, 1041–42, 1049-1050 (S.D.N.Y. 1995) (prison officials' practice of using amateur inmate interpreters during medical visits who were not bound to maintain confidentiality of other inmates' medical information violated the other inmates' Fourteenth Amendment right to due process and right to privacy); *but see Franklin v. D.C.*, 163 F.3d 625, 638 n.13 (D.C. Cir. 1998) (disagreeing with the decision in *Clarkson*: "This elevates the evidentiary doctor-patient privilege and the ethical obligations of physicians to a constitutionally-required status."). *Cf. Cortes v. Johnson*, 114 F. Supp. 2d 182, 186 (W.D.N.Y. 2000).

The Ninth Circuit has recognized an inmate's limited right to informational privacy of medical records under the Fourteenth rather than the Fourth Amendment. *Seaton v. Mayberg,* 610 F.3d 530, 537–39 (9th Cir.2010) *cert. denied*, 562 U.S. 1222, (2011). *See also Doe v. Delie,* 257 F.3d 309, 317 (3d Cir. 2001) (holding that an inmate has a privacy right guarding against disclosure of his sensitive medical information, especially to other inmates, but that right is subject to substantial restrictions and limitations in order for correctional officials to achieve legitimate correctional goals and maintain institutional security, citing *Turner v. Safley,* 482 U.S. 78, 89 (1987)); *Franklin v. McCaughtry*, 110 F. App'x 715, 719 (7th Cir. 2004) (unpubl.) (observing that inmates "at best have very limited privacy rights," and collecting cases addressing whether and in what circumstances inmates might have a constitutional right "in their medical information").

The Court will permit Plaintiff to proceed on this claim, but will entertain a qualified immunity argument if appropriate after Defendant surveys case law. The Supreme Court has recognized a constitutional right to privacy regarding "the individual

interest in avoiding disclosure of personal matters." *Whalen v. Roe,* 429 U.S. 589, 599 (1977). In *Whalen,* the Court did not define the boundaries of this right or hold that there is a constitutional right to privacy for *medical records*. In *NASA v. Nelson,* 562 U.S. 134 (2011), the Supreme Court "assume[d], without deciding" that the Constitution protects such a right, but expressly declined to consider its extent. *Id.* at 751. The *NASA* Court noted that the Supreme Court had said virtually nothing on the subject of an "individual interest in avoiding disclosure of personal matters" since issuance of *Nixon v. Admin. of Gen. Servs.,* 433 U.S. 425, 457 (1977). *See NASA*, 562 U.S. at 146 (assuming without deciding that there exists a privacy interest of constitutional significance).

4.  **Meal Claims**

Plaintiff asserts that from February 29, 2024, until March 15, 2024, he was placed on a meal modification for his own safety. To the extend Plaintiff complains that the meals were unappetizing or that he did not eat them because he had to wash his hands with warm water rather than soap and water, he has not stated a constitutional claim.

Plaintiff also asserts that he is a sincere follower of Old Testament dietary laws, and that the meals were not kosher. He does not state whether he had a kosher meal memorandum issued to him at that time; in other words, prison officials must be on notice that a prisoner requires kosher meals as part of their religious observance before prison official can be liable for a constitutional violation. These allegations potentially state a claim if prison officials were on notice as to a kosher meal requirement; however, with the overlay of suicide watch unit purposes, it is unclear whether there is clearly established law supporting Plaintiff's claims. Plaintiff may proceed on First Amendment free exercise

SUCCESSIVE REVIEW ORDER BY SCREENING JUDGE - 9

grounds but Defendants may assert a qualified immunity defense, if appropriate.

### 5. Due Process Atypical and Significant Hardship Claim

Plaintiff asserts that the conditions of confinement on suicide watch amount to an atypical and significant hardship, whereupon due process rights arise. *See Sandin v. Conner*, 515 U.S. 472 (1995). However, mental health professionals attempt to elicit verbal information about Plaintiff's suicidal ideation from him every day. In addition, the mental health staff engages in multidisciplinary meetings consisting of mental health professionals and security, medical, and administrative team members. See Case 08, Dkt. 90-1 at 4." Complex behavioral situations such as Mr. Williams presents require effective multidisciplinary decision-making as a matter of good correctional and clinical practice," opined Dr. Campbell. *Id*. The Court concludes that no due process claim arises from Plaintiff's particular set of allegations, where his refusal to verbally interact with mental health professionals is knowing and willful, mental health professionals attempt to speak to him daily, and multidisciplinary teams review his status.

### 6. Individuals Named but not Tied to Claims and Official Capacity Claims

Plaintiff also has not specified which Defendant did what as to the few claims upon which he is permitted to proceed, and therefore he cannot proceed against the large number of persons set forth in the Amended Complaint. Plaintiff is well-aware that a civil rights complaint requires the personal participation of each Defendant. The Court will permit Plaintiff to proceed against Walter Campbell, the chief psychologist for the IDOC. If Plaintiff desires to proceed against other defendants on the narrow claims upon which he has been authorized to proceed, he may file a second amended complaint of 20 pages or

less that states the "who, what, where, when, why, and how" of each claim against each other defendant.

Plaintiff has also sued Defendants in their official capacity, which is a claim for injunctive relief. Because Plaintiff's pleading is narrowed to a past period of confinement in the suicide watch unit, an official capacity claim is subject to dismissal.

7. **Access to Courts Claims**

Plaintiff complains he did not have sufficient room in his 20-page complaint to state the facts supporting his causes of action. Therefore, his access to courts claims will be severed into a new case, and he may file a 20-page complaint limited to access to courts claims in the new case.

Plaintiff is reminded of the standard for stating a past access to courts claim: A claims for denial of access to the courts may arise from loss of a suit that cannot now be tried (backward-looking claim). *Christopher v. Harbury*, 536 U.S. 403, 412–15 (2002). To state a backward-looking access to courts claim, a prisoner must allege facts supporting three elements: (1) official acts that frustrated the inmate's litigation; (2) loss of a "nonfrivolous" or "arguable" underlying claim that is set forth in the Complaint, including the level of detail necessary "as if it were being independently pursued"; and (3) specific allegations showing that remedy sought in the access to courts claim is not otherwise available in a suit that could be brought. *Id*. at 415-17.

8. **Conclusion**

Plaintiff may proceed only as outlined above. This Order does not guarantee that any of Plaintiff's claims will be successful; it merely finds that one or more is colorable,

meaning that the claims will not be summarily dismissed at this stage. This Order is not intended to be a final or comprehensive analysis of Plaintiff's claims, but it is only a determination that one or more of Plaintiff's claims is plausible and should proceed to the next stage of litigation.

## ORDER

**IT IS ORDERED:**

1. Plaintiff's Motion for Extension of Time to File Complaint (Dkt. 15) is GRANTED.

2. Plaintiff's Motion for Adequate Time to File a Motion and Expand the Record and for an Evidentiary Hearing (Dkt. 21) are DENIED.

3. Page 16 is missing from Plaintiff's Amended Complaint. *See* Dkt. 24. If he desires to submit page 16, he may do so within 14 days after entry of this Order.

4. Plaintiff's Motion to Review Amended Complaint (Dkt. 23) is GRANTED to the extent set forth herein.

5. The Clerk of Court shall serve, via the ECF system, a copy of this Order and Plaintiff's Amended Complaint (Dkt. 24), on the following counsel on behalf of **Defendant Dr. Walter Campbell**: Mary Karin Magnelli, Deputy Attorney General for the State of Idaho, Idaho Department of Corrections, 1299 North Orchard, Ste. 110, Boise, Idaho 83706.

6. Plaintiff may proceed on only the claims set forth above against Dr. Walter Campbell; all other claims against all other Defendants are DISMISSED, and all other Defendants are TERMINATED as parties to this action. If Plaintiff later discovers facts sufficient to support a claim that has been dismissed, Plaintiff may

move to amend the complaint to assert such claims.[3]

7. Defendant Dr. Walter Campbell will be allowed to waive service of summons by executing, or having their counsel execute, the Waiver of Service of Summons as provided by Federal Rule of Civil Procedure 4(d) and returning it to the Court within 30 days. If Defendants choose to return the Waiver of Service of Summons, the answer or pre-answer motion will be due in accordance with Rule 12(a)(1)(A)(ii).

8. The parties must follow the deadlines and guidelines in the Standard Disclosure and Discovery Order for Pro Se Prisoner Civil Rights Cases, issued with this Order.

9. The Court will not entertain in this case allegations that the IDOC's designated prisoner e-filing, copying, and return of court documents system is deficient. Those claims are being litigated in another case.

10. Any amended pleadings must be submitted, along with a motion to amend, within 150 days after entry of this Order.

11. Dispositive motions must be filed no later than 300 days after entry of this Order.

12. Each party must ensure that all documents filed with the Court are simultaneously served upon the opposing party (through counsel if the party has counsel) by first-class mail or via the CM/ECF system, pursuant to Federal Rule of Civil Procedure 5. Each party must sign and attach a proper mailing certificate to each document

---

[3] Any amended complaint must contain all of Plaintiff's allegations in a single pleading; the amended complaint will replace the original Complaint. Therefore, defendants and claims from the original Complaint that are not included in the amended complaint will no longer be considered part of this case. *See* Dist. Idaho Loc. Civ. R. 15.1 ("Any amendment to a pleading, whether filed as a matter of course or upon a motion to amend, must reproduce the entire pleading as amended. The proposed amended pleading must be submitted at the time of filing a motion to amend.").

filed with the court, showing the manner of service, date of service, address of service, and name of person upon whom service was made.

13. The Court will not consider ex parte requests unless a motion may be heard ex parte according to the rules and the motion is clearly identified as requesting an ex parte order, pursuant to Local Rule of Civil Practice before the United States District Court for the District of Idaho 7.2. ("Ex parte" means that a party has provided a document to the court, but that the party did not provide a copy of the document to the other party to the litigation.)

14. All Court filings requesting relief or requesting that the Court make a ruling or take an action of any kind must be in the form of a pleading or motion, with an appropriate caption designating the name of the pleading or motion, served on all parties to the litigation, pursuant to Federal Rule of Civil Procedure 7, 10 and 11, and Local Rules of Civil Practice before the United States District Court for the District of Idaho 5.1 and 7.1. The Court will not consider requests made in the form of letters.

15. No party may have more than three pending motions before the Court at one time, and no party may file a motion on a particular subject matter if that party has another motion on the same subject matter currently pending before the Court. Motions submitted in violation of this Order may be stricken, summarily denied, or returned to the moving party unfiled.

16. Plaintiff must notify the Court immediately if Plaintiff's address changes. Failure to do so may be cause for dismissal of this case without further notice.

17. Pursuant to General Order 324, this action is hereby returned to the Clerk of Court for random civil case assignment to a presiding judge, on the proportionate basis previously determined by the District Judges, having given due consideration to the existing caseload.

DATED: February 23, 2026

_____
David C. Nye
U.S. District Court Judge